UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CHARLES RUMA**,

    **Plaintiff,**

                                                    **Civil Action 2:09-cv-00121**
**v.**                                              **Judge Algenon L. Marbley**
                                                  **Magistrate Judge E.A. Preston Deavers**

**DAVID SHASHURA**, *et al.*,

    **Defendants.**

## REPORT AND RECOMMENDATION

### I.  BACKGROUND

Following entry of default, this matter is before the Court for consideration of damages in this case.[1]  On October 18, 2010, the undersigned recommended that the Court enter default judgment against Defendants David and Diane Shashura for disobeying court orders and failing to appear in this case.  (Report and Recommendation, ECF No. 64.)  The Court subsequently adopted the undersigned's recommendation without objection, entering default judgment against Defendants.  (ECF No. 65, 66.)  The undersigned held a hearing on January 26, 2011 to determine the extent of damages to which Plaintiff, Charles Ruma, is entitled.  Plaintiff, represented by counsel, appeared and testified at the hearing.  Defendants did not attend the hearing or otherwise notify the Court regarding their inability to attend.  For the reasons that follow, it is **RECOMMENDED** that the Court **AWARD** Plaintiff $310,140.00 in compensatory damages; $66,905.28 in attorneys' fees and costs; and $50,000 in punitive damages.

---

[1]  The Honorable Algenon L. Marbley previously referred this matter to the undersigned to conduct a hearing on damages if necessary.  (ECF No. 63.)

## II.  FINDINGS OF FACT

At the hearing, Plaintiff, through testimony and the admission of exhibits, presented uncontested evidence.  From this testimony and evidence, the Court makes the following findings of fact:

1. Plaintiff Charles Ruma owns fifty percent of a joint venture known as Foxwood Stables.

2. Foxwood Stables purchases, owns, and races thoroughbred horses in Ohio.

3. On or about October 11, 2005, Defendants prepared and submitted to the Ohio State Racing Commission an Application for Registration of Ohio Foaled Thoroughbred ("Application") in which they certified that a then "unnamed foal" of the horse Leza born on April 3, 2005 (which foal was subsequently named "Marble Cliff") was foaled in Ohio.

4. Defendants sent the Application to the Ohio Racing Commission in Columbus, Franklin County, Ohio, and the Ohio Racing Commission received the Application.

5. Based upon the representations contained in the Application, the Racing Commission issued a Certificate of Ohio Foaled Thoroughbred ("Certificate") on November 14, 2005 which certified that Marble Cliff was an Ohio foaled horse.

6. On or before November 14, 2005, in conjunction with, and for the purpose of, the selling of Marble Cliff at a horse sale held at Keeneland in Lexington, Kentucky, Defendants again represented that Marble Cliff was an Ohio foaled horse.

7. Defendants' representations, and the resulting certification by the Ohio Racing Commission, that Marble Cliff was an Ohio foaled horse were material because, as an Ohio foaled horse, Marble Cliff was entitled to be entered in races in Ohio that were limited to accredited Ohio thoroughbred horses and Ohio foaled horses, pursuant to Revised Code 3769.083 which establishes the Ohio thoroughbred race fund.

8. Defendants knew that Marble Cliff was not an Ohio foaled horse.

9. Plaintiff relied upon defendants' false representations and false certification to the Ohio Racing Commission in making the decision to purchase Marble Cliff.

10. In further reliance upon the representation that Marble Cliff was an Ohio foaled horse, Plaintiff and his co-owner of Foxwood Stables, Joseph Sugar, entered

        Marble Cliff in a number of Ohio thoroughbred races that were limited to Accredited Ohio thoroughbred horses and Ohio foaled horses (the "Ohio stakes races").

11. Marble Cliff placed first in four of those Ohio races and second in one Ohio stakes race. His total winnings from those five races were $110,140.00. A portion of the purses from those races came from the Ohio thoroughbred race fund established pursuant to Revised Code 3769.083.

12. In June 2008, the Ohio Racing Commission commenced an investigation to determine whether Marble Cliff and eight other horses bred by Defendants, and certified by them as having been foaled in Ohio, were in fact foaled in Ohio. The Racing Commission's investigation revealed that none of the nine horses, including Marble Cliff, was foaled in Ohio. Marble Cliff was foaled in Kentucky.

13. As a result of the defendants' false certification, the Ohio Racing Commission revoked Marble Cliff's Certificate and declared that Marble Cliff was not eligible to participate in any of the Ohio stakes races in which he had already participated.

14. The Ohio Racing Commission therefore ordered Foxwood Stables to (a) disgorge to the Ohio Racing Commission $45,126.00 in purse money which had already been paid on those races and (b) forfeit $54,000.00 in remaining purse moneys that Marble Cliff had won in those races but which had not yet been paid to Foxwood Stables.[2]

15. Joseph Sugar, Jr. and Foxwood Stables have irrevocably assigned to Plaintiff all of their right, title, and interest in and to any claims, actions, and causes of action they have or may have against Defendants arising out of or in any way related to the horse named Marble Cliff, including but not limited to, any and all claims that have been asserted, may be asserted, or could be asserted in this action.

16. The difference between Marble Cliff's value to Plaintiff as an Ohio foaled horse and his value to Plaintiff as a Kentucky foaled horse was at least $200,000.

17. Plaintiff's attorneys fees for this action totaled $61,502.50 with costs of $5,402.78.

---

[2] The evidence also indicated that $11,014.00 was taken for jockey fees.

## III.  LEGAL ANALYSIS

A.  Applicable Law

Under Ohio law, a plaintiff claiming fraud must demonstrate "a resulting injury proximately caused by [] reliance" on a material misrepresentation.[3]  *Doe v. SexSearch.com*, 551 F.3d 412, 417 (6th Cir. 2008) (citing *Orbit Elecs., Inc. v. Helm Instrument Co.*, 167 Ohio App.3d 301, 313–14 (Ohio Ct. App. 2006)).  The Ohio Supreme Court has noted that "[i]t has long been the rule in our state that '[a] person injured by fraud is entitled to such damages as will fairly compensate him for the wrong suffered; that is, the damages sustained by reason of the fraud or deceit, and which have naturally and proximately resulted therefrom.'"  *Burr v. Bd. of Cnty. Comm'rs of Stark Cnty.*, 23 Ohio St.3d 69, 74 (Ohio 1986) (quoting *Foust v. Valleybrook Realty Co.*, 4 Ohio App. 3d 164, 166 (Ohio Ct. App. 1981)); *Cf. Padgett v. Sanders*, 130 Ohio App.3d 117, 122 (Ohio Ct. App. 1998) ("When fraud induces the purchase of real estate, damages are measured as the difference between the value of the property as presented and the actual value at the time of sale.").

Moreover, in an action for fraud a plaintiff may recover punitive damages if he or she shows "'that the fraud is aggravated by the existence of malice or ill will,' or that it is 'particularly gross or egregious.'"  *Gold Craft v. Ebert's Contracting & Remodeling, L.L.C.*, No. 09AP-448, 2010 WL 3171311, at *3 (Ohio Ct. App. Aug. 12, 2010) (quoting *Charles R. Combs Trucking, Inc. v. Internatl. Harvester Co.*, 12 Ohio St.3d 241, 241 (Ohio 1984)).  Furthermore, in a tort involving fraud "when punitive damages are awarded, the award for compensatory

---

[3]  Proximate cause is generally "defined as a happening or event which as a natural or continuing sequence produces an injury without which the injury would not have occurred." *McDougall v. Smith*, No. 11-10-04, 2010 WL 5109077, at *1 (Ohio Ct. App. Dec. 13, 2010).

4

damages may include attorney fees." *Zappitelli v. Miller*, 114 Ohio St. 3d 102, 103 (Ohio 2007); *see also Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 558 (Ohio 1994) ("Attorney fees may be awarded as an element of compensatory damages where the jury finds that punitive damages are warranted.")

B. Analysis

In this case, Defendants' misrepresentation that Marble Cliff was an Ohio foaled horse was the proximate cause of Plaintiff's financial injury in the amount of $310,140.00. Because Marble Cliff was not an Ohio foaled horse, as Defendants represented, Plaintiff was forced to forfeit $110,140.00 of winnings from Ohio races. Additionally, Plaintiff testified, based on over twenty years of experience in the horse racing business, that Marble Cliff's value was at least $200,000 less as a Kentucky foaled horse than he would have been as an Ohio foaled horse. Plaintiff indicated that the reason for the horse's decline in value is that the level of competition is lower in Ohio races and because he is forced to race Marble Cliff in Kentucky where horse racing is famously more popular. Accordingly, because Marble Cliff is no longer eligible for such Ohio races, his future earnings potential, and sales value, is significantly less.

In addition to the above compensatory damages, the undersigned also finds that punitive damages, as well as attorneys' fees and costs, are appropriate in this case. Specifically, Plaintiff produced strong evidence that Defendants' fraud was particularly egregious. Based on the circumstances, Defendants clearly knew that Marble Cliff was not an Ohio foaled horse. Despite this knowledge, Defendants registered Marble Cliff as an Ohio foaled horse and again represented Marble Cliff as an Ohio foal when he was sold. Furthermore, the evidence indicates that Defendants knew Plaintiff's were buying Marble Cliff to race him in Ohio races for which he was ineligible. Based on Plaintiff's egregious conduct, the undersigned finds that punitive

5

damages of $50,000 are warranted. Additionally, the undersigned recommends that the Court include Plaintiff's attorneys' fees and costs in the final award.

## IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **AWARD** Plaintiff $310,140.00 in compensatory damages; an additional $66,905.28 in attorneys' fees and costs; and $50,000 in punitive damages. These damages total **$427,045.28**.

The Clerk is **DIRECTED** to send a copy of this Order to Defendants by email at wynnmere@aol.com.

## V. NOTICE

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate

review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

February 7, 2011                                      /s/ *Elizabeth A. Preston Deavers*
                                                                        Elizabeth A. Preston Deavers
                                                                        United States Magistrate Judge